UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-20787-KING/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SCOTTE CHERENFANT,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Defendant Scotte Cherenfant's Motion to Suppress Evidence – Illegal Search and Seizure (D.E. 22). This case was referred to Chief United States Magistrate Judge John J. O'Sullivan pursuant to 28 U.S.C. § 636. See Orders of Reference and Recusal (D.E. 23, 45). Having carefully reviewed the applicable filings and the law, and having held an evidentiary hearing on November 22, 2021, the undersigned respectfully RECOMMENDS that the Defendant Scotte Cherenfant's Motion to Suppress Evidence – Illegal Search and Seizure (D.E. 22) be **DENIED** for the reasons stated herein.

## BACKGROUND

On October 2, 2015, the defendant was charged by indictment in the Southern District of Florida with one count of use of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2), and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). See Indictment (D.E. 3). On September 15, 2021, the defendant filed the instant motion. See Defendant's Motion to Suppress Evidence – Illegal Search and Seizure (D.E. 22) (hereinafter "Motion"). On September 29, 2021, the government

filed its response in opposition.  See United States of America's Response to Defendant Cherenfant's Motion to Suppress Evidence (D.E. 28) (hereinafter "Response").

On November 22, 2021, the undersigned held an evidentiary hearing.  The government presented the testimony of former City of North Miami Beach Police Department Detective Craig Catlin.[1]  The defendant testified on his own behalf.  The undersigned admitted into evidence Government's Exhibit 2 and Defendant's Exhibit 1.

This matter is ripe for adjudication.

## FINDING OF FACTS

On January 29, 2015, Detective Catlin, then a member of the North Miami Beach Police Department, and Homeland Security Investigations Special Agent Joe McBride were patrolling in the vicinity of Northeast 6th Avenue and 178th Street in the City of North Miami Beach, Florida.  It was daytime and Detective Catlin was driving an unmarked police vehicle.  As he pulled up to a stop sign at Northeast 6th Court, the detective looked to his left and noticed a car, approximately 100 yards away, stopped in the middle of the road with its tail lights on.  Detective Catlin also noticed illegally-tinted windows on the car.  He ran a check of the license tag and discovered the car was owned by a rental car company.  The detective knew from training and experience that rental car companies do not allow any kind of tinting on their cars.

Detective Catlin turned left and, pulling up behind the stopped car, tapped the airhorn in his police vehicle and turned on its emergency lights.  The detective ordered

---

[1]   Detective Catlin appeared via Zoom.  The Court, the defendant, defense counsel, and government counsel were all able to observe the witness for the duration of his testimony.  The government and the defendant agreed to Detective Catlin testifying by Zoom.

the driver to exit the vehicle.  The defendant, who was the sole occupant of the car, complied.

When Detective Catlin asked whether he had a valid driver's license, the defendant responded that it was no good.  The defendant stated that his identification card was in his wallet, in the side pocket of the driver's side door.  Detective Catlin then asked the defendant for his name and date of birth; using that information, the detective ran a check through the computer in his police vehicle and verified the defendant's identity.  The records check revealed that the defendant's driver's license had been suspended numerous times and that he had three "habitual traffic offender" designations.

At that point, Detective Catlin decided to arrest the defendant because driving with a suspended license as a habitual traffic offender is a felony offense.  He searched the defendant incident to arrest and found a gift card inside the defendant's pocket.

Detective Catlin then decided, in accordance with North Miami Beach Police Department policy,[2] that the vehicle should be impounded and towed because the driver was being arrested on a felony charge, and because the car's location in the middle of the street in a residential neighborhood created a hazardous condition on the road.

---

[2]   Detective Catlin testified regarding the City of North Miami Beach Police Department's "Towing, Storage, and Release of Vehicles" policy, which delineates the situations in which a vehicle is towed, impounded, and inventoried.  The detective indicated that the following policies were implicated once he arrested the defendant: Policy 1.1.1.1 (towing a vehicle after a traffic arrest or a criminal arrest, or as authorized by the vehicle's owner, including rental car companies), Policy 1.1.1.2 (towing where an abandoned vehicle creates a hazard or obstructs the roadway), Policy 1.1.1.4 (towing pursuant to a traffic arrest), Policy 1.1.1.5 (towing a vehicle involved in criminal activity); and Policy 1.1.1.8 (requiring that all towed or impounded vehicles be completely inventoried).

Next, Detective Catlin performed an inventory search of the vehicle before it was towed to the station. He found the defendant's wallet in the side pocket of the driver's side door, where the defendant indicated it would be. Inside the wallet was the defendant's identification card and a Green Dot credit card with the defendant's name embossed on the front of the card.[3]

With regard to the credit card, Detective Catlin explained that the magnetic stripe on the back of the card stores four pieces of digital information: the name and account number of the cardholder (both of which are embossed on the front of the card), and the expiration date and the CCV, or security code (both of which are printed on the card). The detective testified that it was his practice to use a skimming device on all credit cards he recovered, to verify that the information contained in the magnetic stripe on the back of the card matched the information imprinted on the card. If the information does not match, it means the card has been re-encoded with stolen information and is a counterfeit.

Detective Catlin ran the Green Dot credit card with the defendant's name on it through the skimming device he kept in his police vehicle. All four pieces of information stored on the card were different from the information embossed and printed on the outside of the card.

In addition to the credit card, Detective Catlin also recovered from inside the vehicle a brand-new laptop, money orders, and receipts for purchases made that day. The receipts displayed the last four digits of the account number that was stored on the

---

[3] Detective Catlin explained that a Green Dot credit card requires that the credit card account be funded before the card can be used.

magnetic stripe, not the numbers on the outside of the credit card.[4]

The defendant also testified at the suppression hearing but presented a different version of events. According to the defendant, his car was stopped on the swale (the area between the sidewalk and the street), not in the middle of the road as Detective Catlin testified. He exited the car immediately upon seeing the police vehicle pull up with its emergency lights on. Two officers jumped out of their vehicle, rushed toward him, and handcuffed him. The defendant told them he did not have a valid driver's license, and that his identification was in his wallet which was in his pocket, not in the side pocket of the car door as Detective Catlin testified. Within five or ten minutes of being handcuffed, the defendant was placed in a marked patrol car that arrived on the scene, transported to the station, and later informed that he was under arrest.

## LEGAL ANALYSIS

The defendant moves to suppress the evidence seized after his arrest as fruits of an unlawful search. He argues first that Detective Catlin did not have a valid basis to search the passenger compartment of his car incident to his arrest. The defendant also contends that Detective Catlin's warrantless scanning of the magnetic stripe on the back of the credit card constituted an unlawful search under of the Fourth Amendment.[5]

The defendant relies primarily on Arizona v. Gant, 556 U.S. 332 (2009), which concerned a warrantless search of the passenger compartment of a vehicle incident to

---

[4] The defendant's arrest resulted in criminal charges in State court which were ultimately dismissed following the State's *nolle prossing* of the case.

[5] In his motion to suppress, the defendant raised the possibility of filing a motion to exclude certain evidence related to his state court proceedings based on a theory of *res judicata*. However, at the suppression hearing, defense counsel expressly stated he would not be pursuing that argument which is, therefore, waived.

the defendant's arrest, and Riley v. California, 573 U.S. 373 (2014), which involved the warrantless search of a cell phone. In those cases, the Supreme Court concluded that the respective searches violated the defendants' Fourth Amendment rights and that evidence derived therefrom must be suppressed.

As an initial matter, the Court has weighed the testimony of the two witnesses, taking into account the consistencies and inconsistencies in their testimony, their relative interests in the outcome of the case, and their demeanor on the witness stand. The Court finds Detective Catlin was a credible witness and accepts his testimony as to what transpired on January 29, 2015.

Detective Catlin's testimony remained internally consistent throughout the hearing. Importantly, the detective testified consistently that he did not have a basis to make an arrest immediately following the initial stop; notwithstanding that fact, for officer safety reasons, he would not allow the defendant to retrieve his wallet from inside the car even though the defendant said his identification was in there. Only after confirming the defendant's identity, and his driving record, was there a basis for a felony arrest. Moreover, the detective was candid when he could not recall a fact, admitting, for example, that he could not recall whether the police vehicle he was driving that day had a PA system which he used to instruct the defendant to exit his car, or whether he (the detective) stepped out of the police vehicle and yelled instructions to the defendant.

On the other hand, there were significant inconsistencies in the defendant's testimony, not the least of which was his testimony that he voluntarily produced the identification in his wallet, later contradicted by testimony that Detective Catlin searched him and retrieved the wallet from his pocket. The defendant essentially admitted it all

6

happened so fast, he could not remember all the details.

In addition, the detective had no interest in the outcome of the suppression hearing, while the defendant clearly did. In fact, the Court considers the defendant's testimony - that the officers rushed him, immediately placed him in handcuffs, that within five or ten minutes (the amount of time changed) he was driven to the station, and only advised a few hours later why he was under arrest - to be implausible. See, e.g., United States v. Ramirez-Chilel, 289 F.3d 744, 749-50 (11th Cir. 2002) (affirming denial of the defendant's motion to suppress, where the finder of fact did not base credibility determination solely on the status of the witness, but also weighed the testimonies of the witnesses, "taking into account the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand.").

For the reasons discussed below, the undersigned finds that neither Gant nor Riley apply to the facts of this case, and that the defendant's Fourth Amendment rights were not violated by the search of the car or the scan of the credit card. Accordingly, the Court recommends that the defendant's motion to suppress be denied.

The Fourth Amendment safeguards against unreasonable searches and seizures, providing in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The general rule is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Gant, 556 U.S. at 338 (internal citation omitted). Moreover,

7

evidence that derives so immediately from an unlawful search is barred from use at trial as fruit of official illegality.  Wong Sun v. United States, 371 U.S. 471, 485 (1963).

1. Search of the Vehicle

The defendant argues that the search of his vehicle was an unlawful search incident to his arrest.  The government counters that the search was an inventory search performed in accordance with established departmental policy and did not violate the defendant's Fourth Amendment rights.

An inventory search of a vehicle is a well-established exception to the Fourth Amendment warrant requirement.  Colorado v. Bertine, 479 U.S. 367, 371 (1987).  The reason for this exception is two-fold:  "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office," and "the obviously public nature of automobile travel."  South Dakota v. Opperman, 428 U.S. 364, 367-69 (1976) (noting that vehicles are frequently taken into police custody in the interests of public safety and as part of "community caretaking functions," with "[t]he authority of police to seize and remove from the street vehicles impeding traffic or threatening public safety and convenience [being] beyond challenge.").

To establish that the inventory search exception applies, the government must demonstrate that the police had the authority to impound the vehicle and must comply with the policies governing the search.  United States v. Williams, 936 F.2d 1243, 1248 (11th Cir. 1981).  "The Supreme Court has indicated that inventory searches are only justifiable if performed pursuant to explicit and comprehensive procedures.  Without such procedures, officers are left with no guidance in the performance of a duty which is meant not as an investigatory technique but as a means for safeguarding individuals'

possessions and protecting the police from false claims." Id. (citing Bertine, 479 U.S. at 372).  Thus, once a vehicle is lawfully impounded, police may conduct a warrantless inventory search of the car if they continue to follow standardized criteria.  Sammons v. Taylor, 967 F2d. 1533, 1543 (11th Cir. 1992).

The evidence in this case shows that the initial stop occurred after Detective Catlin noticed illegal tinting on the windows of the car.  The defendant was unable to provide a valid driver's license, prompting a records check that supplied the probable cause necessary for Detective Catlin to arrest the defendant for driving with a habitual traffic offender suspension.

Then, in accordance with established police department procedures, Detective Catlin determined that the defendant's vehicle would be impounded and towed because of the defendant's felony arrest and the hazardous situation created by the location of the car in the middle of the street.[6]  Once that decision was made, and also in conformity with established police department policy, an inventory search of the car was conducted.

Because Detective Catlin followed standardized departmental policies when he impounded and performed the inventory search of the defendant's vehicle, the subsequent discovery of the Green Dot credit card inside the passenger compartment of the vehicle was lawful.[7]  Gant, which did not involve an inventory search conducted

---

[6] Departmental policy also permitted impoundment and towing because the car was a rental car with illegally tinted windows.

[7] Moreover, if the Court believed the defendant's testimony that his wallet was inside his pocket at the time of his arrest, rather than inside the car, then Detective Catlin's discovery of the Green Dot credit card would have resulted from a lawful search incident to arrest.

pursuant to established departmental procedures, is thus inapplicable here.

    2.  <u>Scan of the Magnetic Stripe on the Credit Card</u>

The defendant next argues that Detective Catlin's scan of the magnetic stripe on the back of the Green Dot credit card constituted a warrantless search in violation of <u>Riley</u>. In <u>Riley</u>, the Supreme Court held that police "must generally secure a warrant" before searching digital information stored or accessible on a cell phone, even when the device was seized incident to arrest. <u>Id.</u> at 386. The defendant equates his privacy interest in the digital data stored on his credit card to the privacy interest in data stored on a cell phone, and concludes that evidence derived from the warrantless search of his card must be suppressed.

The Court is persuaded by the reasoning in <u>United States v. Turner</u>, 839 F.3d 429 (5th Cir. 2016), and other decisions that determined that a defendant does not have a reasonable expectation of privacy in the information stored on the magnetic stripe on a credit or gift card. <u>Id.</u> at 436 ("society does not recognize as reasonable an expectation in the information encoded in a gift card's magnetic stripe."); accord <u>United States v. DE L'Isle</u>, 825 F.3d 426, 432-33 (8th Cir. 2016) (holding that officers' warrantless scanning of magnetic strips on the back of credit cards lawfully seized from the defendant did not violate a legitimate privacy interest and was not a search within the meaning of the Fourth Amendment); <u>United States v. Bah</u>, 794 F.3d 617, 629-30 (6th Cir. 2015) (holding that the warrantless scan of the magnetic strips on credit, debit, and gift cards did not violate the defendants' Fourth Amendment rights because the scans did not constitute a search under the Fourth Amendment); <u>United States v. Medina</u>, No. 09-20727-CR, 2009 WL 3669636, at *11 (S.D. Fla. Oct. 24, 2009) (Torres, Mag. J.)

(report and recommendation rev'd on other grounds) (declining to find an expectation of privacy, for Fourth Amendment purposes, in the information contained on a credit card issued by third parties for commercial purposes).

The information stored on the magnetic stripe of a credit card is an "infinitesimally small[]" amount of data, and initially encoded and stored by the issuing institution. Turner, 839 F.3d at 435.  That is in marked contrast to the "immense storage capacity" of cell phones and computers.  Id. (quoting Riley, 573 U.S. at 391).  The different storage capacities correlate to the vastly different purposes of these electronic storage devices:  cards are used to purchase goods and services, whereas cell phones and computers are used to store personal information.  Id. at 435-36.  "Individuals and society [use the data encoded by the issuer of the card] to facilitate a financial transaction and purchase goods and services."  Id. at 436.  Moreover, "the commercial purpose of gift cards . . .means that third party cashiers will often be doing the same swiping that law enforcement [do]," while access to the personal information stored on cell phones and computers is typically restricted by a password.  Id.

The Court concludes that the defendant did not have a reasonable expectation of privacy in the data stored on his credit card.  Therefore, the Court holds that Detective Catlin's warrantless scan of the defendant's credit card was not a search under the Fourth Amendment.  The detective was entitled to analyze the card once it lawfully came into his possession.  Accordingly, suppression of the evidence derived from that analysis is not warranted.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully RECOMMENDS that the

Defendant Scotte Cherenfant's Motion to Suppress Evidence – Illegal Search and Seizure (D.E. 22) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James Lawrence King, Senior United States District Judge. **Any objections must be accompanied by a copy of the hearing transcript.** Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 6th day of December, 2021.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE